# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

JAMES SPARANO,
  *Plaintiff*,

  v.

JLO AUTOMOTIVE, INC.,
*doing business as* EXECUTIVE
KIA,
  *Defendant.*

No. 3:19-cv-00681 (VAB)

## RULING AND ORDER ON PLAINTIFF'S PARTIAL MOTION FOR SUMMARY JUDGMENT AND DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

James Sparano ("Plaintiff") has sued JLO Automotive, Inc., doing business as Executive Kia ("JLO Automotive" or "Defendant") for alleged violations of the Truth in Lending Act, 15 U.S.C. § 1601 *et seq.*, the Electronic Funds Transfer Act, 15 U.S.C. § 1693k, and the Credit Repair Organization Act,[1] 15 U.S.C. § 1679 *et seq.*, as well as for state law breach of contract claims. *See* Compl., ECF No. 1 (May 6, 2019) ("Compl.").

Mr. Sparano has moved for partial summary judgment on the alleged Truth in Lending Act violations. *See* Pl.'s Mot. for Partial Summ. J., ECF No. 56 (Sept. 22, 2020); Mem. in Supp. of Partial Summ. J., ECF No. 56-1 (Sept. 22, 2020) ("Pl. Mot. Summ. J."). In response, JLO Automotive has moved for summary judgment on all claims. Def.'s Mot. for Summ. J., ECF No. 57 (Sept. 24, 2020); Def.'s Mem. of Law in Supp. of Mot. for Summ. J., ECF No. 58 (Sept. 24, 2020) ("Def. Mot. Summ. J.").

---

[1] Plaintiff admits that "discovery showed that [D]efendant did not inflate [ ] [P]laintiff's income[,]" and, accordingly, has withdrawn his claim under the Credit Repair Organization Act. *See* Pl. Opp'n to Def.'s Summ. J. Mot. at 2, ECF No. 61 (Oct. 14, 2020). Accordingly, this claim will be dismissed.

For the following reasons, Mr. Sparano's motion for partial summary judgment is

**DENIED**. The motion for summary judgment by JLO Automotive is **GRANTED in part** and

**DENIED in part**.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

### A.  Factual Background

JLO Automotive is a new and used car dealer in Connecticut. *See* Pl.'s Local Rule

56(a)(1) Statement ¶ 2, ECF No. 56-2 (Sept. 22, 2020) ("Pl. SMF"); Def.'s Response to Pl.'s

Local Rule 51(a)(1) Statement ¶ 2, ECF No. 60-2 (Oct. 13, 2020) ("Def. SMF Response"); *see*

*also* Def.'s Local Rule 56(a)(1) Statement of Undisputed Material Facts ¶ 1, ECF No. 59 (Sept.

24, 2020) ("Def. SMF"); Pl.'s Local Rule 56(a)(2) Statement ¶ 1, ECF No. 61-5 (Oct. 14, 2020)

("Pl. SMF Response").

On November 5, 2018, Mr. Sparano purchased a used 2010 Hyundai Elantra (the

"Vehicle") from JLO Automotive. Pl. SMF Response ¶ 3. The Vehicle was purchased under a

retail installment contract. *See id.*; *see also* Ex. H to Aff. of John Gogliettino IV, ECF No. 58-1

(Sept. 24, 2020) ("Retail Installment Contract").

The retail installment contract (the "Agreement") showed the following terms of Mr.

Sparano's loan obligation: an annual percentage rate of 18.99%; finance charge of $6,796.86;

amount financed of $10,985.72; total payments of $17,782.36; total sale price of $18,732.30;

number of payments as 66; the monthly payment amount of $269.43; and payments due monthly,

beginning December 05, 2018. *Id.*; Def. SMF ¶ 6; Pl. SMF Response ¶ 6 ("Admitt[ing] that the

review copy . . . included [these] terms[.]"); *see also* Ex. A to Aff. of John Gogliettino IV, ECF

No. 58-1 (Sept. 24, 2020) ("Review Copy").

Mr. Sparano was provided with an unsigned, paper "review copy" of the Agreement ("Review Copy"). *See* Def. SMF ¶¶ 5, 7–8; Pl. SMF Response ¶¶ 5, 7–8; Pl. SMF ¶ 7; Def. SMF Response ¶ 7. The Review Copy provided for optional Guaranteed Auto Protection and a service contract, which Mr. Sparano purchased.[2] Def. SMF ¶¶ 7, 13–14; Pl. SMF Response ¶ 7, 13–14; *see also* Review Copy at 2 (provisions for "optional extended warranty or service contract" and "[o]ptional Guaranteed Auto Protection"); Retail Installment Contract at 2 (providing Mr. Sparano's signature beneath provisions for "optional extended warranty or service contract" and "[o]ptional Guaranteed Auto Protection").

Mr. Sparano signed a declaration stating that he was "given the opportunity" to review a paper version of the Review Copy before signing the Agreement.[3] Def. SMF ¶ 11; Pl. SMF Response ¶ 11 ("[a]dmitt[ing] that . . . plaintiff . . . signed [a declaration acknowledging electronic signature process]"); *see also* Ex. C to Aff. of John Gogliettino IV at 3, ECF No. 58-1 (Sept. 24, 2020) ("ESign Decl."). Mr. Sparano, however, has asserted, contrary to this

---

[2] Mr. Sparano neither admits nor denies that the Guaranteed Auto Protection and service contract were not a condition to obtain credit, *see* Pl. SMF Response ¶ 7, and that he voluntarily purchased the Guaranteed Auto Protection and service contract, *see* Pl. SMF Response ¶¶ 7, 13–14. JLO Automotive has provided evidence to support each of these factual allegations. *See* Retail Installment Contract at 2; Ex. B to Def. Mot. Summ. J. at 44:6-25, 45:1-4, ECF No. 58-2 (Sept. 24, 2020) ("Sparano Dep."). The Court therefore considers these facts admitted. *See* D. Conn. L. Civ. R. 56(a)(1) ("All material facts set forth in [a moving party's 56(a)1] statement and supported by the evidence will be deemed admitted (solely for purposes of the motion) unless . . . controverted by the . . . [s]tatement required to be filed and served by the opposing party[.]"); *Miron v. Town of Stratford*, 976 F. Supp. 2d 120, 127 (D. Conn. 2013) ("Where a party fails to appropriately deny material facts set forth in the moving party's 56(a)1 statement, and where those facts are supported by evidence in the record, those facts are deemed to be admitted." (internal citations omitted)); *Knight v. Hartford Police Dep't*, No. 3:04-CV-969 (PCD), 2006 WL 1438649, at *4 (D. Conn. May 22, 2006) (citing *SEC v. Global Telecom Servs. L.L.C.*, 325 F. Supp. 2d 94, 109 (D. Conn. 2004) (Rule 56 of the Federal Rules of Civil Procedure "does not impose an obligation on a district court to perform an independent review of the record to find proof of a factual dispute.")).

[3] Mr. Sparano additionally was presented with an "ESign Consent" for use of an electronic signature on the remaining forms. *See* Def. SMF ¶ 10; Ex. B to Aff. of John Gogliettino IV at 3, ECF No. 58-1 (Sept. 24, 2020) ("ESign Consent"). Plaintiff admits to the existence of this document but disputes that it was signed. Pl. SMF Response ¶ 10. The Court notes that the referenced document does contain a typed signature by Mr. Sparano, which is dated Nov. 5, 2018 at 05:40:27 PM. *See* ESign Consent at 3. Mr. Sparano does not assert in briefing or attached affidavits and exhibits that this signature is a forgery or otherwise invalid, or that, as a result of an invalid ESign Consent, electronic signatures in the relevant paperwork are invalid.

declaration, that he did not receive a paper Review Copy until after the transaction was

completed. *See* Pl. SMF Response ¶¶ 5, 8–9.

Included in the documents that Mr. Sparano signed is an authorization for automatic

electronic payment. *See* Pl. SMF ¶ 8; Def. SMF Response ¶ 8; Ex. K to Aff. of John Gogliettino

IV, ECF No. 58-1 (Sept. 24, 2020) ("Authorization for Electronic Recurring Payments"). This

authorization provides for automatic withdrawal of weekly payments in the amount of $67.36 by

the Credit Acceptance Corporation ("Credit Acceptance"). [4]  *See id.*; Def. SMF ¶ 23. The parties

dispute whether this weekly payment schedule altered Mr. Sparano's overall debt obligation.[5]

*See* Pl. SMF Response ¶ 23.

The parties further dispute when Mr. Sparano received a copy of the relevant paperwork

to review. *See Id.* ¶¶ 5, 8–9. Mr. Sparano claims that he only received a copy of the paperwork

after the transaction was completed. *Id.* There is no dispute, however, that, regardless of the

timing, Mr. Sparano only received disclosures of the monthly payment terms. *See* Pl. SMF ¶ 12;

---

[4] Plaintiff does not specifically admit or deny that his decision to have payments automatically deducted was voluntary. *See* Pl. SMF Response ¶¶ 23, 26. These allegations, therefore, are considered admitted, where JLO automotive has provided evidence to support the allegation. *See* Def. SMF ¶¶ 23, 26 (citing, *inter alia*, Sparano Dep. at 71:22-25; 72–73); *see also See* D. Conn. L. Civ. R. 56(a)(1) ("All material facts set forth in [a moving party's 56(a)1 statement and supported by the evidence will be deemed admitted (solely for purposes of the motion) unless . . . controverted by the . . . [s]tatement required to be filed and served by the opposing party[.]"); *Miron*, 976 F. Supp. 2d at 127 ("Where a party fails to appropriately deny material facts set forth in the moving party's 56(a)1 statement, and where those facts are supported by evidence in the record, those facts are deemed to be admitted." (internal citations omitted)); *Knight*, 2006 WL 1438649, at *4 (citing *Global Telecom Servs., L.L.C.*, 325 F. Supp.2 d at 109 (Rule 56 of the Federal Rules of Civil Procedure "does not impose an obligation on a district court to perform an independent review of the record to find proof of a factual dispute.")).

[5] JLO Automotive asserts that the overall debt obligation remained $17,782.36. *See* Def. SMF ¶¶ 24–25; *see also* Ex. P to Aff. of John Gogliettino IV, ECF No. 58-1 (Sept. 24, 2020) ("First Credit Acceptance Transaction Report") (showing weekly payments of $67.36 on $17,782.36 contract); Ex. Q to Aff. of John Gogliettino IV, ECF No. 58-1 (Sept. 24, 2020) ("Second Credit Acceptance Transaction Report") (showing the same). Mr. Sparano asserts that the weekly payments resulted in Plaintiff paying off his loan more quickly. *See* Pl. SMF Response ¶ 23 ("Plaintiff's weekly payment obligation paid down his loan faster ($67.36 x 4.3 weeks in a month = $289.65)); *see also* Ex. 11 to Pl. Mem. in Opp'n to Def. Mot. for Summ. J. at 4–9, ECF No. 61-2 (Oct. 14, 2020) (Mr. Sparano's calculation that weekly payments of $67.36 result in a total debt obligation of $16,756.92).

Def. SMF Response ¶ 12 ("Plaintiff's decision to satisfy his monthly obligation with weekly payments does not necessitate new disclosures[.]").

### B.  Procedural History

On May 6, 2019, Mr. Sparano filed a Complaint against JLO Automotive. *See* Compl.

On July 12, 2019, JLO Automotive filed an Answer to the Complaint, with affirmative defenses. *See* Answer, ECF No. 12 (July 12, 2019).

On March 12, 2020, following a series of discovery disputes, *see generally* Min. Entry, ECF No. 39 (Feb. 6, 2020), Plaintiff filed a motion for summary judgment as to Defendant's liability under the Truth in Lending Act, *see* Pl.'s Mot. for Partial Summ. J., ECF No. 42 (Mar. 12, 2020); Mem. in Supp. of Partial Summ. J., ECF No. 42-1 (Mar. 12, 2020) ("First Pl. Mot. Summ. J."). This motion was denied without prejudice to renewal, along with an order directing the parties to schedule a deposition of Mr. Sparano as soon as practicable. *See* Min. Entry, ECF No. 50 (Apr. 9, 2020).

On September 22, 2020, Mr. Sparano renewed his motion for partial summary judgment. *See* Pl.'s Mot. for Partial Summ. J., ECF No. 56 (Sept. 22, 2020); Pl. Mot. Summ. J. JLO Automotive opposed this motion, *see* Opp'n to Pl.'s Mot. for Partial Summ. J., ECF No. 60 (Oct. 13, 2020) ("Def. Opp'n"), and Mr. Sparano submitted a reply in further support, *see* Reply Supp. Pl.'s Mot. for Partial Summ. J., ECF No. 62 (Oct. 27, 2020) ("Pl. Reply").

On September 24, 2020, JLO Automotive submitted a cross-motion for summary judgment on all claims. *See* Def.'s Mot. for Summ. J., ECF No. 57 (Sept. 24, 2020); Def. Mot. Summ. J. Mr. Sparano opposed this motion, *see* Pl.'s Opp'n to Def.'s Summ. J. Mot., ECF No. 61 (Oct. 14, 2020) ("Pl. Opp'n"), and JLO Automotive submitted a reply in further support, *see* Reply to Pl.'s Opp'n to Def.'s Mot. for Summ. J., ECF No. 63 (Oct. 27, 2020) ("Def. Reply").

## II.     STANDARD OF REVIEW

A court will grant a motion for summary judgment if the record shows no genuine issue as to any material fact, and the movant is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The non-moving party may defeat the motion by producing sufficient evidence to establish that there is a genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Id.* at 247–48 (emphasis in the original).

"[T]he substantive law will identify which facts are material." *Id.* at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.*; *see Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996) ("[M]ateriality runs to whether the dispute matters, i.e., whether it concerns facts that can affect the outcome under the applicable substantive law." (citing *Anderson*, 477 U.S. at 248)).

When a motion for summary judgment is supported by documentary evidence and sworn affidavits and "demonstrates the absence of a genuine issue of material fact," the non-moving party must do more than vaguely assert the existence of some unspecified disputed material facts or "rely on conclusory allegations or unsubstantiated speculation." *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 44 (2d Cir. 2015) (citation omitted). Instead, a party opposing the motion for summary judgment "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Id.* "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 250 (citing

*Dombrowski v. Eastland*, 387 U.S. 82, 87 (1967); *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 290 (1968)).

A court must view any inferences drawn from the facts in the light most favorable to the party opposing the summary judgment motion. *See Dufort v. City of N.Y.*, 874 F.3d 338, 343 (2d Cir. 2017) ("On a motion for summary judgment, the court must 'resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought.'").

## III.    DISCUSSION

### A.  Truth in Lending Act

The Truth in Lending Act ("TILA") aims "to assure a meaningful disclosure of credit terms . . .  and to protect the consumer against inaccurate and unfair credit billing and credit card practices." 15 U.S.C. § 1601(a); *see also Vincent v. The Money Store*, 736 F.3d 88, 105 (2d Cir. 2013) (The purpose of TILA is to "protect . . . consumer[s] against inaccurate and unfair credit billing and credit card practices and promote the informed use of credit by assur[ing] a meaningful disclosure of credit terms." (alteration in original) (quotation marks and internal citation omitted)). The Act requires "clear and accurate disclosures" of terms, including "finance charges, annual percentage rates of interest, and the borrower's rights." *Beach v. Ocwen Fed. Bank*, 523 U.S. 410, 412 (1998) (internal citations omitted).

Such disclosures must be provided "before [ ] credit is extended." 15 U.S.C. § 1638(b)(1). The Federal Reserve's Regulation Z has interpreted this phrase to mean "before consummation of the transaction." 12 C.F.R. § 226.17(b) ("The creditor shall make disclosures before consummation of the transaction."); *see Bentley v. Greensky Trade Credit, LLC*, 156 F. Supp. 3d 274, 287 (D. Conn. 2015) (citing the same). Regulation Z further requires that the

creditor make disclosures "clearly and conspicuously in writing, in a form that the consumer may keep." 12 C.F.R. § 226.17(a)(1); *see also* 12 C.F.R. § 226.17(c)(1) (disclosures "shall reflect the terms of the legal obligation between the parties").

The requirements of TILA are interpreted strictly. *See Cartagena-Cordero v. Five Star Cars, LLC*, No. 3:19-CV-1728 (SRU), 2020 WL 5912601, at *6–*7 (D. Conn. Oct. 6, 2020), *amended on reconsideration on other grounds*, 494 F. Supp. 3d 204 (D. Conn. 2020) ("The requirements of the TILA are highly technical but full compliance is required." (quoting *Clement v. Am. Honda Fin. Corp.*, 145 F. Supp. 2d 206, 210 (D. Conn. 2001) (alteration in original))). "The court need find only a single violation of the statutory requirements to hold a defendant liable under [ ] TILA." *Id.* (quoting *Clement*, 145 F. Supp. 2d at 210 (alteration in original)); *see also* 15 U.S.C. § 1640 ("[A]ny creditor who fails to comply with any requirement imposed under this part . . . with respect to any person is liable to such person . . . .").

Mr. Sparano has moved for summary judgment on the grounds that JLO Automotive violated TILA by failing to provide the mandatory and material number, amount, and due dates of the weekly payment transaction that the parties agreed upon before the transaction was assigned to Credit Acceptance, in violation of 15 U.S.C.A. § 1638(a)(6) and Regulation Z. *See* Pl. Mot. Summ J.; Pl. Reply at 1. Mr. Sparano additionally has argued that he is entitled to summary judgment because the Guaranteed Auto Protection and service contract provisions of the Agreement constituted a hidden finance charge within the meaning of the Act. *See* First Pl. Mot. Summ. J. at 6–7.

JLO Automotive has filed a cross-motion for summary judgment on the alleged TILA violations, arguing that there is no genuine issue of material fact that it provided accurate and timely disclosures, and that Mr. Sparano's purchase of the Guaranteed Auto Protection and

service contract provisions were voluntary. *See* Def. Mot. Summ. J. at 6–16. On these grounds, Defendant contends that no provision of TILA has been violated, and, accordingly, it should be granted summary judgment on this count. *Id.*

The Court will address below each of the potential TILA violations, any of which would be sufficient to determine liability for Defendant on this count under 15 U.S.C. § 1640.

### 1. Accuracy of Disclosures

Under TILA, the terms of the credit disclosed by the lender must be "clear and accurate." *Beach,* 523 U.S. at 412. Terms that must be disclosed include, without limitation, the "number, amount, and due dates or period of payments scheduled to repay the total[.]" 15 U.S.C. § 1638 (a)(6); *see also* 15 U.S.C. § 1602(v) (a "material" disclosure under TILA includes "the annual percentage rate, the method of determining the finance charge and the balance upon which a finance charge will be imposed, the amount of the finance charge, the amount to be financed, the total of payments, the number and amount of payments, [and] the due dates or periods of payments scheduled to repay the indebtedness").

Mr. Sparano argues that Defendant's TILA disclosures were not accurate because the retail installment contract provided for sixty-six monthly payments of $269.43; however, when the parties agreed on a weekly payment term of $67.36, Mr. Sparano contends the material terms of the agreement changed, as this rate of payment allowed him to pay off his loan at an earlier date, and, therefore, the total payment, sales price, and finance charge disclosed in the retail installment contract were inaccurate. Pl. Mot. Summ. J. at 1–6; Pl. Opp'n at 6–8.

JLO Automotive contends that the terms of the Agreement were clear and accurate at the time deal was consummated. *See* Def. Mot. Summ. J. at 9–16. To this point, Defendant argues that consummation occurred at the time the retail financing agreement was signed, *see* Def.

Reply at 1–6, rather than, as Mr. Sparano contends, when the parties agreed upon the weekly

payment term and the financing obligation was "booked in" by Credit Acceptance, *see* Pl. Opp'n

at 5–6, 9. This voluntary change in the payment plan post-consummation, Defendant argues,

does not require new TILA disclosures as a matter of law. Def. Mot. Summ. J at 10–16; Def.

Reply at 1–8.

The Court agrees, at least as to the time of consummation.

Regulation Z defines consummation as "the time that a consumer becomes contractually

obligated on a credit transaction," which is a question of state law. 12 C.F.R. § 226.2(a)(13);

*Murphy v. Empire of Am., FSA*, 746 F.2d 931, 933–34 (2d Cir. 1984) (applying state law to

determine whether a transaction was consummated under TILA). Under Connecticut law, it is

well settled that consummation occurs when the buyer signs the retail installment contract, which

obligates them to lend and borrow the funds. *See Conley v. 1008 Bank St., LLC*, No. 3:20-CV-

284 (CSH), 2020 WL 4926599, at *7 (D. Conn. Aug. 22, 2020) ("Plaintiff did not become

'contractually obligated on a credit transaction' until he signed the [Retail Installment]

Contract[.]" (emphasis omitted) (internal quotation omitted)); *cf. Am. Bank of Conn.*, 1998 WL

950981, at *2 (borrower's signature on a "Use and Occupancy Agreement" did not constitute

consummation because the parties were not "bound on the credit terms for the purchase

transaction" by this agreement (emphasis omitted)); *see also Murphy*, 746 F.2d at 934 ("The

transaction is consummated when the lender and borrower sign a contract obligating them,

respectively, to lend and borrow the funds.").

The retail installment contract, which neither party disputes was signed, *see* Pl. SMF

Response ¶¶ 17–18, obligates both Mr. Sparano and JLO Automotive to the terms of the

Agreement, *see* Retail Installment Contract at 1 ("You [Mr. Sparano] . . . agree[ ] to buy the

10

Vehicle" from the "Creditor-Seller" and "Creditor-Seller's assignee," *i.e.*, JLO Automotive and its assignee, Credit Acceptance). Mr. Sparano's signature on the Agreement, including its monthly payment term, therefore consummated the transaction under TILA.

Accordingly, the Court rejects Mr. Sparano's argument that the disclosures were inaccurate at the time of consummation.

The issue remains, however, whether JLO Automotive was required to provide additional, accurate disclosures when Mr. Sparano authorized the automatic withdrawal of weekly, rather than monthly, payments in the amount of $67.36. In general, events occurring after a transaction do not trigger disclosure obligations, *see Ryder v. J.P. Morgan Chase Bank, N.A.*, No. 3:13-CV-01929 (AVC), 2016 WL 11567652, at *5 (D. Conn. June 21, 2016) (quoting 15 U.S.C. § 1634), *aff'd*, *Ryder v. J.P. Morgan Chase Bank*, 767 F. App'x 29, 31 (2d Cir. 2019) (summary order), except in narrow circumstances such as refinancing,[6] *see* 12 C.F.R. § 226.20(a) ("A refinancing is a new transaction requiring new disclosures to the consumer.").

This rule applies regardless of whether the event occurring after the transaction renders the initial disclosure inaccurate, *i.e.*, in this case, regardless of whether the weekly payment term rendered initial disclosure of the monthly payment terms inaccurate.[7] *See* 15 U.S.C. § 1634 ("[I]f information disclosed [under TILA] . . . is subsequently rendered inaccurate as the result of any

---

[6] Neither party has argued that a refinancing occurred here. *See especially* Pl Opp'n at 10 (distinguishing case "involving a refinancing reducing the weekly payment", which is "not the case here").

[7] There can be no dispute that, when Mr. Sparano agreed to automatic weekly payments in the amount of $67.36, it increased the monthly payment rate to $289.65, which exceeds the $269.43 monthly rate in the Agreement. This case, as a result, differs from the (likely more common) circumstance in which a borrower chooses to pay an agreed-upon rate on a more frequent basis. *Cf. Pridegon v. Gates Credit Union*, 683 F.2d 182, 188, 190 (7th Cir. 1982) (additional disclosure for weekly, as opposed to monthly, payments not required when Plaintiff requested weekly withdrawals on a refinanced loan, which "[o]n a monthly basis . . . [is] the [same] amount indicated in the [p]romissory [n]ote").

act, occurrence, or agreement subsequent to the delivery of the required disclosures, the inaccuracy resulting therefrom does not constitute a violation[.]").

On the record before the Court, and in light of the dispute about the timeliness of the monthly disclosures, *see* Section III.A.2, *infra*, it cannot be conclusively determined whether the authorization for withdrawal of weekly payments occurred before or after initial monthly disclosures were provided. Due to the lack of clarity as to this material fact, the Court cannot reach a conclusive determination as to Defendant's liability. *See Anderson*, 477 U.S. at 255 (1986) ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge [when] ruling on a motion for summary judgment[.]").

Accordingly, summary judgment for Mr. Sparano will be denied on this theory of liability under TILA. The possibility that a jury could find a violation under this theory at trial, notwithstanding this ruling, means that Defendant's motion for summary judgment for the alleged violation of TILA also will be denied. *See* 15 U.S.C. § 1640 (imposing liability for "fail[ure] to comply with any requirement" of TILA),

## 2. Timeliness of Disclosures

Under 15 U.S.C. 1638(b)(1), disclosures under TILA must be provided before credit is extended, and accordingly, "before consummation of the transaction," as interpreted by Regulation Z. *See* 12 C.F.R. § 226.17(b) ("The creditor shall make disclosures before consummation of the transaction."). This interpretation is entitled to Chevron deference. *See Bentley*, 156 F. Supp. 3d at 288; *see also Vincent*, 736 F.3d at 105–06 ("The Supreme Court has indicated that Regulation Z is entitled to *Chevron* deference where the Federal Reserve has

reasonably interpreted an ambiguous term of TILA." (citing *Household Credit Servs., Inc. v. Pfennig*, 541 U.S. 232, 239–44 (2004)).

Defendant argues that it is entitled to summary judgment because, in addition to being accurate, its disclosures were timely, as evidenced by Mr. Sparano's written declaration that he "given the opportunity" to review a paper version of the retail installment contract before electronically signing documents. *See* Def. Mot. for Summ. J. at 6–9; ESign Decl.

Mr. Sparano argues, in his motion for summary judgment, that the disclosures were not timely because he was not provided with a copy of the retail installment contract until after the transaction was financed with a weekly payment obligation, and that any statement to the contrary in Mr. Gogliettino's affidavit constitutes inadmissible hearsay. Pl. Opp'n at 2–6. He further contends that the declaration Mr. Sparano signed stating that he was "given the opportunity" to review a paper version of the retail installment contract constitutes an impermissible statutory waiver. Pl. Opp'n at 4–5.

The Court disagrees.

Because the Court cannot grant summary judgment on the issue of whether disclosure of the weekly payment term was required, as discussed in the foregoing section, *see* Section III.A.1, *infra*, the timeliness of such disclosures, if required, cannot be determined at this time. The monthly disclosures, however, can be addressed here.

Mr. Sparano stated under oath in both his affidavit and deposition that he did not receive paper disclosures before he signed the Agreement. *See* Ex. 1 to Pl. Mot. Summ. J. ¶¶ 4, 7–8, ECF No. 42-3 (Mar. 12, 2020) ("Sparano Aff."); Ex. B to Def. Mot. Summ. J. at 38:15-16; 41:18-19; 43:2-9, ECF No. 58-2 (Sept. 24, 2020) ("Sparano Dep."). Regardless of whether Mr. Gogliettino's declaration to the contrary is inadmissible hearsay, there are other facts in the

record that contradict these attestations. Most significantly, Mr. Sparano signed a declaration that confirmed he was "given the opportunity" to review a paper version of the retail installment contract before electronically signing documents.[8] *See* ESign Decl.; *see also* Sparano Dep., at 40:10-25, 41:1-10 (acknowledging signature).

Within this District, there are different views as to whether evidence outside the retail installment contract may be considered for the purpose of establishing TILA liability. *See Sterling v. Farran & Ezedine, LLC*, No. 3:10-CV-1119 (WWE), 2011 WL 219697, at *3 (D. Conn. Jan. 20, 2011) (finding liability under TILA on motion for default judgment where "[p]laintiff's affidavit establishes that she was not provided with a copy of the contract prior to [ ] consummation"); *cf. Muñoz v. JLO Auto., Inc.*, No. 3:19-CV-01793 (MPS), 2020 WL 4432946, at *4 (D. Conn. July 31, 2020), *order vacated in part on reconsideration on other grounds*, No. 3:19-CV-01793 (MPS), 2020 WL 6607789 (D. Conn. Nov. 12, 2020) ("[I]t would be inconsistent with TILA's emphasis on written disclosures to promote the 'informed use of credit' to allow a consumer to ignore the clear, conspicuous written terms of a disclosure by proceeding with a claim based solely on oral statements that contradict the disclosure."), *order vacated in part on reconsideration*, No. 3:19-CV-01793 (MPS), 2020 WL 6607789 (D. Conn. Nov. 12, 2020).[9] The Court declines to resolve this disagreement here, as it has not been directly

---

[8] The Court notes, in response to Plaintiff's argument that this provision of the Agreement constituted an impermissible statutory waiver, *see* Pl. Opp'n at 4–5, that it does not preclude or procedurally impede Mr. Sparano's right to sue. *Cf. Taub v. World Fin. Network Bank*, 950 F. Supp. 2d 698, 702 (S.D.N.Y. 2013) (concluding that a "notice and cure provision . . . would essentially amount to a waiver of TILA's initial account-opening disclosure requirements, because Defendant would be able to provide deficient initial disclosures and remedy them only after the contract was signed"). These written terms in the Agreement therefore do not constitute an improper waiver of Mr. Sparano's statutory rights, and accordingly may be considered in determining whether summary judgment is appropriate.

[9] On reconsideration, Judge Shea revised this reasoning as relevant only to the debt cancellation insurance provisions of TILA "[u]pon closer review of the language in [12 C.F.R. § 226.4(d)(3)(i)]." *See JLO Auto., Inc.*, 2020 WL 6607789, at *2; *see also* 12 C.F.R. § 226.4(d)(3)(i) (Regulation Z provision for "[v]oluntary debt cancellation or debt suspension fees" that permits such costs to be excluded from the finance charge if, among other requirements,

addressed in briefing by either party. *See Melillo v. Brais*, No. 3:17-CV-520 (VAB), 2019 WL

1118091, at *6 (D. Conn. Mar. 11, 2019) (A court may grant summary judgment *sua sponte*

under Federal Rule of Civil Procedure 56(f) "only '[a]fter giving notice and a reasonable time to

respond' and 'after identifying for the parties material facts that may not be genuinely in

dispute.'" (citing *In re 650 Fifth Ave. and Related Properties*, 830 F.3d 66, 96 (2d Cir. 2016)

(alteration in original))).

     Accordingly, summary judgment for Plaintiff will be denied on this theory of TILA

liability, and the Court will turn to the final theory of liability upon which summary judgment

could be granted to Mr. Sparano: hidden finance disclosures.[10]

### 3. Coverage and Service Contract

     TILA requires creditors to disclose any "finance charge[s]" that a consumer will pay as

part of a credit transaction. *See* 15 U.S.C. § 1638(a)(3). A finance charge is "the sum of all

charges, payable directly or indirectly by the person to whom the credit is extended, and imposed

directly or indirectly by the creditor as an incident to the extension of credit." 15 U.S.C. §

1605(a). "[A] creditor is obligated under § 1638(a)(3) to disclose, as a finance charge, any costs

charged to customers buying on credit, but not charged to customers buying with cash, in [a]

comparable transaction." *James v. Lopez Motors, LLC*, No. 3:16-CV-835 (VLB), 2018 WL

---

"[t]he debt cancellation or debt suspension agreement or coverage is not required by the creditor, and this fact is disclosed in writing[.]").

[10] Mr. Sparano alleged this TILA violation in his first motion for partial summary judgment. *See* First Pl. Mot. Summ. J. at 6–7. This initial motion for partial summary judgment was denied without prejudice to renewal by the Court, *see* Min. Entry, ECF No. 50 (Apr. 9, 2020), and the argument was not renewed in Mr. Sparano's subsequent partial summary judgment motion, *see* Pl. Mot. Summ. J. The Court, however, considers that argument for summary judgment here, despite the lack of renewal, as it has been briefed by the parties. *See* Def. Mot. Summ. J. 30–34; Pl. Opp'n at 12; Def. Reply at 9–10; *see also Melillo*, 2019 WL 1118091, at *6 (A court may *sua sponte* grant summary judgment under Federal Rule of Civil Procedure 56(f) "only '[a]fter giving notice and a reasonable time to respond' and 'after identifying for the parties material facts that may not be genuinely in dispute.'" (citing *In re 650 Fifth Ave. & Related Props.*, 830 F.3d 66, 96 (2d Cir. 2016) (alteration in original)).

1582552, at *3 (D. Conn. Mar. 31, 2018) (quoting *Joseph v. Excellence Auto Trade LLC*, No. 16-CV-1534 (FB) (LB), 2017 WL 1157178, at *4 (E.D.N.Y. Feb. 10, 2017) (alteration in original), *report and recommendation adopted,* No. 16-CV-1534 (FB) (LB), 2017 WL 1154999 (E.D.N.Y. Mar. 27, 2017)).

"Finance charges" can include debt cancellation fees, like those JLO charged customers who chose to enroll in its Guaranteed Auto Protection program. 12 C.F.R. § 226.4(b)(10). Debt cancellation fees, however, may be excluded from the finance charge if the following requirements are met: (1) "[t]he debt cancellation or debt suspension agreement or coverage is not required by the creditor, and this fact is disclosed in writing"; (2) "the fee or premium for the initial term of coverage is disclosed in writing"; (3) "as applicable, for debt suspension coverage[,] [t]hat the obligation to pay loan principal and interest is only suspended, and that interest will continue to accrue during the period of suspension"; and (4) "[t]he consumer signs or initials an affirmative written request for coverage after receiving the disclosures specified in this paragraph, except as provided in paragraph (d)(4) of this section." 12 C.F.R. § 226.4(d)(3); *see also Muñoz*, 2020 WL 6607789, at *3 ("GAP [Guaranteed Auto Protection] insurance must be, in fact, voluntary to be lawfully excluded from the finance charge.").

Mr. Sparano argues that JLO Automotive violated TILA by failing to designate the add-on Guaranteed Auto Protection and service contract policies as "estimated" under 12 C.F.R. § 1026.17(c)(2),[11] given that it did not know whether or when these costs would be finalized. *See* Pl. Opp'n at 12.

---

[11] This regulation states: "If any information necessary for an accurate disclosure is unknown to the creditor, the creditor shall make the disclosure based on the best information reasonably available at the time the disclosure is provided to the consumer, and shall state clearly that the disclosure is an estimate." 12 C.F.R. § 1026.17(c)(2).

Defendant argues, as a preliminary matter, that the Court should reject this argument because the inclusion of costs for Guaranteed Auto Protection and the service contract were not alleged in the Complaint. Def. Mot. Summ. J. at 30–32. Further, Defendant contends that the Guaranteed Auto Protection and service contract warranty are excluded from the disclosure requirements of Regulation Z as an appropriate form of debt cancellation coverage, for which the requirements of 12 C.F.R. § 226.4(d) have been met. *Id.* at 32–34.

The Court agrees, at least as to the conclusion.

Regardless of whether this claim was raised in the Complaint, there is no evidence in the record before the Court that could lead a reasonable jury to find that Mr. Sparano's election of the service contract and Guaranteed Auto Protection was involuntary. The Agreement states, in bold, that the service contract is "OPTIONAL", and that the customer "[is] not required to purchase . . . [the] service contract as a condition of purchasing this Vehicle on credit." *See* Retail Installment Contract at 2. Mr. Sparano provided a signature directly below this disclosure. *Id.*

He further confirmed the voluntariness of his choice to opt in the service contract in his deposition. *See* Sparano Dep. 33:2-25; 34:1-8; 44:6-18. Although Mr. Sparano testified in his deposition that he "assumed he had to purchase [the service contract] to purchase the [V]ehicle," *id.* at 33:13-15, such an assumption is not sufficient to suggest that his election of the service contract was involuntary or imposed upon him in any way. *Cf. Lopez Motors*, 2018 WL 1582552, at *3 ("Plaintiffs allege in their complaint and affidavits that they were required to purchase a service contract as a condition of receiving credit. [. . .] Thus, the service contract is a finance charge as defined by 15 U.S.C. § 1605(a)."). No reasonable jury therefore could find that the service contract constituted a finance charge that must be disclosed under TILA.

17

The Retail Installment Contract also states, in bold, that the gap coverage is "Optional" and that "[Guaranteed Auto] [P]rotection will not be provided under this Contract unless [the customer] sign[s] for it below and agree to pay the additional cost shown below[.]" *See* Retail Installment Contract at 2. Mr. Sparano provided a signature, and the Agreement stated the price of the Guaranteed Auto Protection. *Id.* Mr. Sparano further signed a separate document, as required by federal regulations, confirming his affirmative, written request for Guaranteed Auto Protection:

> Guaranteed Asset/Auto Protection (GAP) has been explained to me in conjunction with the purchase of my car on credit. After hearing the explanation, I WOULD like to purchase GAP Coverage in accordance with the terms and conditions of the insurance or waiver certificate provided to me from the dealer.
>
> NOTICE: GAP is VOLUNTARY, and NOT REQUIRED in order to buy this car on credit.

Ex. F to Aff. of John Gogliettino IV, ECF No. 58-1 (Sept. 24, 2020). The voluntary nature of Mr. Sparano's enrollment in Guaranteed Auto Protection further is corroborated by his deposition testimony. *See* Sparano Dep. at 44:16-25; 45:1-4.

Meanwhile, there is no evidence, or even allegation in the pleadings, to support that Mr. Sparano's acceptance of the Guaranteed Auto Protection was involuntary. *Cf. Muñoz*, 2020 WL 6607789, at *3 ("Executive Kia violated Regulation Z and TILA by telling Muñoz that GAP [Guaranteed Auto Protection] insurance was required and by failing to include its cost, as well as the interest on that cost, in the finance charge."). As with the service contract, no reasonable jury could find on these facts that the Guaranteed Auto Protection constituted a finance charge that must be disclosed under TILA.

Mr. Sparano's argument that the service contract and Guaranteed Auto Protection constituted an "estimated" cost under TILA, which must be disclosed under 12 C.F.R. §

1026.17(c)(2), also is of no avail. The cost of the Guaranteed Auto Protection and service contract were not "unknown", as would require a disclosure under this section of Regulation Z, *see id.*, but rather stated explicitly in the Agreement, *see* Retail Installment Contract at 2 (Lines B and F). The definiteness of this cost, which Mr. Sparano voluntarily assumed, is not made any less definite because Mr. Sparano had the right to cancel, and, indeed, did cancel. *See* Def. SMF ¶¶ 30–31; Pl. SMF Response ¶¶ 30–31. Plaintiff therefore has failed to establish TILA liability on these grounds.

Accordingly, and in the absence of any conclusive determination that a TILA violation occurred, at least at this stage of the proceedings, the parties' cross-motions for summary judgment will be denied.

### B.  The Electronic Funds Transfer Act

Under the Electronic Funds Transfer Act (or "EFTA"), no "person" may "condition the extension of credit to a consumer on such consumer's repayment by means of preauthorized electronic fund transfers[.]" 15 U.S.C. § 1693k(1). "The EFTA itself does not define 'person,' but the regulations implementing the EFTA define 'person' as 'a natural person or an organization, including a corporation, government agency, estate, trust, partnership, proprietorship, cooperative, or association.'" *Gingras v. Rosette*, No. 5:15-CV-101, 2016 WL 2932163, at *23 n.21 (D. Vt. May 18, 2016) (quoting 12 C.F.R. § 1005.2(j)), *aff'd sub nom. Gingras v. Think Fin., Inc.*, 922 F.3d 112 (2d Cir. 2019).

Defendants have moved for summary judgment on this count, arguing that, as a matter of law, Mr. Sparano's argument fails because JLO Automotive is not a "creditor" within the meaning of the statute and because he lacks standing for this claim. Def. Mot. Summ. J. at 17–

19. Defendants further argue that, even if Mr. Sparano's claims were not barred as a matter of law, the facts do not support his claim. *Id.* at 19–20.

The Court agrees, at least as to the conclusion.

Although the Electronic Funds Transfer Act imposes liability on any "person" who extends credit, *see* 15 U.S.C. § 1693k, rather than any creditor, and, assuming for present purposes that Mr. Sparano has standing, he has not shown that he is entitled to relief. Even in his affidavit, *see* Sparano Aff., he has not provided evidence to support that the automatic withdrawals constituted part of the dealer's terms of credit. *Cf. JLO Auto., Inc.*, 2020 WL 4432946, at *4 (declaratory judgment granted for plaintiff on EFTA count where she alleged that Executive Kia told her that "automatic withdrawals were part of Executive Kia's 'low income program'" (internal citation omitted)). Mr. Sparano further testified in his deposition that he enrolled in the electronic payment program voluntarily. Sparano Dep., 70:22-25; 71:1-18; *see also* Ex. D to Aff. of John Gogliettino IV at 1, ECF No. 58-1 (Sept. 24, 2020) ("Credit Acceptance Corporation Disclosure Form") (form signed by Mr. Sparano stating that the electronic payment program "is optional and is not required in order to finance the purchase of the vehicle").

The assertion in briefing that a genuine issue of material fact as to voluntariness exists because "164 out of 190 [Credit Acceptance] contracts included an authorization for electronic payments" is unsupported by any citation to case law, *see* Pl. Opp'n at 15 n.7, and, even drawing this fact in the light most favorable to Mr. Sparano, lacks a plausible connection to whether credit was conditioned on automatic electronic payments in this case—even if all Credit Acceptance contracts included an authorization for electronic payments, that does not suggest that, in this case, Mr. Sparano did not authorize electronic payments voluntarily. The Court

consequently concludes that no reasonable juror could find, based on the facts before the Court, that Defendant conditioned credit on electronic payment authorization.

Accordingly, Defendant's motion for summary judgment on this count will be granted.

### C. Breach of Contract

Defendant contends that Plaintiff has failed to raise a genuine issue of material fact on the alleged breach of contract, and, furthermore, that any recovery is precluded by law. Def. Mot. Summ. J. at 29. Plaintiff responds that the alleged failure of JLO Automotive to pay a third party for the Guaranteed Auto Protection and service contract constituted a breach of the dealer's contractual obligations. Pl. Opp'n. at 12. There is no dispute between the parties, however, that Mr. Sparano cancelled the Guaranteed Auto Protection and service contract, and this issue therefore is moot. *See* Def. SMF ¶¶ 30–31; Pl. SMF Response ¶¶ 30–31.

As to Plaintiff's allegation in the Complaint that JLO Automotive breached the contract "by not complying with applicable statutes", Compl. ¶ 13, it is yet to be determined whether JLO Automotive breached any applicable statutes, as the Court has denied partial summary judgment to Plaintiff on the alleged TILA violations. In light of the outstanding possibility that JLO Automotive may not have violated any applicable statutes, including TILA, the Court need not address the merit of this argument by Mr. Sparano—if no statutory violation is proven, his theory of breach of contract liability fails.[12]

Accordingly, Defendant's motion for summary judgment on this count will be denied.

---

[12] The Court further agrees with Defendant that Plaintiff's potential claims for "unfair practices or breach of the duty of good faith and fair dealing," *see* Compl. ¶ 1, which are not addressed in Plaintiff's response to Defendant's motion for summary judgment, *see* Def. Mot. Summ. J. at 29 n.9; Pl. Opp'n, are conclusory, and, to the extent that Plaintiff is still pursuing them, dismissed.

## IV.     CONCLUSION

For the foregoing reasons, Mr. Sparano's motion for partial summary judgment is

**DENIED**. The motion for summary judgment by JLO Automotive is **GRANTED in part** and

**DENIED in part.**

**SO ORDERED** at Bridgeport, Connecticut, this 30th day of September, 2021.

　/s/ Victor A. Bolden
Victor A. Bolden
United States District Judge