UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

JAMES SPARANO,
     *Plaintiff,*

     v.

JLO AUTOMOTIVE, INC.,
*doing business as* EXECUTIVE
KIA,
     *Defendant.*

No. 3:19-cv-00681 (VAB)

## RULING AND ORDER ON MOTIONS *IN LIMINE* AND MOTION TO AMEND TRIAL MEMO

James Sparano ("Plaintiff") has filed a motion *in limine*, seeking to preclude various types of evidence from introduction at trial. *See* Pl.'s Mot. in Lim., ECF No. 79 (Nov. 19, 2021) ("Pl.'s Mot. in Lim."). JLO Automotive, Inc., doing business as Executive Kia ("JLO Automotive" or "Defendant"), has also filed three separate motions *in limine*, seeking to preclude various types of evidence from introduction at trial. *See* Def.'s Mot. in Lim. re: Damages, ECF No. 76 (Nov. 19, 2021) ("Def.'s First Mot. in Lim."); Def.'s Mot. in Lim. re: Limiting Evid. and Argument to TILA and Breach of Contract Claims at 1, ECF No. 77 (Nov. 19, 2021) ("Def.'s Second Mot. in Lim."); Def.'s Mot. in Lim. re: Parol Evid. R. at 1, ECF No. 78 (Nov. 19, 2021) ("Def.'s Third Mot. in Lim.").

JLO Automotive also filed a motion to amend its trial memo in order to add an additional exhibit. Def.'s Mot. to Amend Pretrial Mem. at 1, ECF No. 88 (Dec. 3, 2021) ("Mot. to Amend").

For the reasons outlined below, the motion to amend [88] is **DENIED**; Mr. Sparano's [79] motion *in limine* is **GRANTED in part and DENIED in part**; JLO Automotive's [76]

motion *in limine* is **GRANTED**; JLO Automotive's [77] motion *in limine* is **GRANTED**; JLO Automotive's [78] *motion in limine* is **DENIED**. The Court's ruling, however, is "subject to change when the case unfolds, particularly if the actual testimony differs from what was [expected]." *Luce v. United States*, 469 U.S. 38, 41 (1984).

## I.      FACTUAL AND PROCEDURAL BACKGROUND

Mr. Sparano originally sued JLO Automotive for alleged violations of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq.*, the Electronic Fund Transfer Act, 15 U.S.C. § 1693k, and the Credit Repair Organizations Act,[1] 15 U.S.C. § 1679 *et seq.*, as well as for state law breach of contract claims. *See* Compl., ECF No. 1 (May 6, 2019) ("Compl."). The Court denied Mr. Sprarano's and JLO Automotive's motions for summary judgment as to the TILA claim. *See* Min. Entry, ECF No. 50 (Apr. 9, 2020); Ruling and Order, ECF No. 64 (Sept. 30, 2021) ("Order").

In denying both motions for summary judgment, however, the Court agreed that it would reject Mr. Sparano's TILA claims premised on the coverage and service contract. *See* Order at 15–19. The Court also explained why it "reject[ed] Mr. Sparano's argument that the disclosures were inaccurate at the time of consummation." *Id*. at 11. To clarify, the Court could not identify a viable accuracy claim. The only remaining potential TILA violation, therefore, concerns the timeliness of the disclosures.

The Court also dismissed Mr. Sparano's Electronic Fund Transfer Act claim, *see id.* at 19–21, and had previously dismissed as moot Mr. Sparano's Credit Repair Organizations Act claim, *see* Order, ECF No. 65 (Sept. 30, 2021) (dismissing the claim as moot). As to the breach

---

[1] Plaintiff admits that "discovery showed that [D]efendant did not inflate [ ] [P]laintiff's income[,]" and, accordingly, has withdrawn his claim under the Credit Repair Organizations Act. *See* Pl. Opp'n to Def.'s Summ. J. Mot. at 2, ECF No. 61 (Oct. 14, 2020). Accordingly, this claim has been dismissed. *See* Order, ECF No. 65 (Sept. 30, 2021).

of contract claims, the Court concluded that the alleged breach concerning the coverage and

service contract was moot and that the viability of Mr. Sparano's breach of contract claims

depended on his identifying a statutory violation. *See* Order at 21. All that remains of Mr.

Sparano's original Complaint, then, is a potential TILA timeliness issue and the breach of

contract claim.

> In advance of the upcoming jury trial, Mr. Sparano now seeks to:

> "1) restrict[ ] defendant to matters at issue during the event of November 5, 2018; 2)
> prohibit[ ] defendant from relying on any documents not produced in discovery; [ ]3)
> prohibit[ ] defendant from using hearsay testimony as to the transaction, or from using
> undisclosed witnesses; 4) prohibit[ ] defendant from referring to certain terms of the
> documents[; and 5) prohibit[ ] defendant from using only parts of documents."

Pl.'s Mot. in Lim., ECF No. 79 (Nov. 19, 2021). JLO Automotive, in turn, seeks to limit Mr.

Sparano's "presentation of evidence to only evidence of actual damages, and not statutory

damages," Def.'s First Mot. in Lim. at 1, to preclude Mr. Sparano from offering evidence beyond

the TILA and breach of contract claims, Def.'s Second Mot. in Lim. at 1, and to preclude Mr.

Sparano "from offering parol evidence or testimony to attempt to explain or contradict the terms

of the signed writings between the parties," Def.'s Third Mot. in Lim. at 1.

> JLO Automotive also seeks to amend the parties' Joint Trial Memorandum to add to its

exhibit list "a letter from Plaintiff's counsel to Defendant dated May 9, 2019, in which counsel

indicates that this case was brought pursuant to the Federal Consumer Credit Protection Act."

Mot. to Amend at 1.

## II.    STANDARD OF REVIEW

### A.  Motion to Amend Pretrial Memorandum

> Federal Rule of Civil Procedure 16(e) allows the Court to "modify the order issued after a

final pretrial conference only to prevent manifest injustice." Fed. R. Civ. P. 16(e). "District

3

courts have considerable discretion in the management of trials, [which] necessarily includes a certain amount of latitude to deviate from the terms of [a] pretrial order[.]" *Manley v. AmBase Corp.*, 337 F.3d 237, 249 (2d Cir. 2003) (internal citation and quotation marks omitted); *see, e.g., Mandarino v. Mandarino*, 408 F. App'x. 428, 432 (2d Cir. 2011) (summary order) (finding no error where the district court permitted defendants to amend the Joint Pretrial Order to include certain witnesses three and a half months prior to the evidentiary hearing).

In determining whether to permit modification of a pretrial order, the Court must consider the following factors: "'(1) the prejudice or surprise in fact to the opposing party; (2) the ability of the party to cure the prejudice; (3) the extent of disruption of the orderly and efficient trial of the case; and (4) the bad faith or willfulness of the non-compliant party. Prejudice to the party seeking amendment or modification of the order is also relevant, as a trial court should not refuse to modify a pre-trial order where manifest injustice will result.'" *Potthast v. Metro-N. R.R. Co.*, 400 F.3d 143, 153 (2d Cir. 2005) (quoting *Rapco, Inc. v. Comm'r*, 85 F.3d 950, 953 (2d Cir. 1996)). The timing of the modification is also relevant, and the Court will consider whether "the evidence or issue was within the knowledge of the party seeking modification at the time of the [final pretrial] conference." *See Potthast*, 400 F.3d at 154.

### B.  Motion *in Limine*

Motions *in limine* provide district courts with the opportunity to rule in advance of trial on the admissibility and relevance of certain forecasted evidence. *See Luce*, 469 U.S. at 40 n.2; *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996). "A district court's inherent authority to manage the course of its trials encompasses the right to rule on motions *in limine*." *Highland Cap. Mgmt., L.P. v. Schneider*, 551 F. Supp. 2d 173, 176 (S.D.N.Y. 2008) (internal citation omitted).

A court should only exclude evidence on motions *in limine* if the evidence is "clearly inadmissible on all potential grounds." *Levinson v. Westport Nat'l Bank*, No. 09-CV-1955 (VLB), 2013 WL 3280013, at *3 (D. Conn. June 27, 2013) (internal citation and quotation marks omitted). The court also retains discretion to reserve judgment on some or all motions *in limine* until trial so that the motions are placed in the appropriate factual context. *See In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*, 643 F. Supp. 2d 471, 476 (S.D.N.Y. 2009); *see also, e.g.*, *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. L.E. Myers Co.*, 937 F. Supp. 276, 286–87 (S.D.N.Y. 1996).

## II.    DISCUSSION

### A.  Motion to Amend Pretrial Memorandum

JLO Automotive moves to amend the parties' Joint Trial Memorandum to add an additional exhibit to its exhibit list. Mot. to Amend at 1. JLO Automotive moves to add as an exhibit "a letter from Plaintiff's counsel to Defendant dated May 9, 2019, in which counsel indicates that this case was brought pursuant to the Federal Consumer Credit Protection Act." *Id*. Notably, Defendant did not provide a copy of the letter in its motion, and did not explain why it needs the exhibit for trial.[2] Defendant argues that "[g]ood cause exists to permit this amendment because the Trial Ready Date is . . . more than 30 days from today's date, and Rule 26(a)(3) requires the disclosure of exhibits at least 30 days before trial." *Id*.

Mr. Sparano, in turn, objects to adding the letter as an exhibit because "[Federal Rule of Evidence] 408 prohibits its use, aside from it being irrelevant to any claim or defense as to the

---

[2] The letter appears to be included as an exhibit in Defendant's objection to Plaintiff's [79] Motion *in Limine*, as Exhibit C. Ex. C to Def.'s Obj. to Pl.'s Mot. in Lim., ECF No. 87-3 (Dec. 3, 2021). That letter includes a settlement offer and states, "[p]lease convey this Rule 408 settlement offer matter to your respective attorney and insurance carrier." *Id*.

incident of the previous November at issue in this case." Pl.'s Opp'n to Mot. to Amend, ECF No. 88 at 1, ECF No. 89 (Dec. 9, 2021). According to Mr. Sparano, "Defendant [did] not reveal that the short post-litigation letter is designated as Fed. R. [Evid.] 408 (confidential) settlement offer."[3] *Id.* (emphasis omitted). Additionally, Mr. Sparano claims that Defendant intends to use the exhibit to "impeach [his] credibility and demonstrate that he did not originally claim what he is claiming now." *Id.* Mr. Sparano asserts that he "is still claiming the same modest amount in settlement of his statutory, actual[,] and punitive damages claims (plus fees and costs)." *Id.* (emphasis omitted). As a final basis for denying the motion, Mr. Sparano notes that "Defendant does not cite any authority or precedent for a motion to amend a Trial Memorandum." *Id.* at 2.

The Court agrees.

Federal Rule of Evidence 408 prohibits admission of settlement offers "either to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction." Fed. R. Evid. 408(a); *see also Trebor Sportswear Co., Inc. v. The Limited Stores, Inc.*, 865 F.2d 506, 510 (2d Cir. 1989) ("In furtherance of the public policy of encouraging settlements and avoiding wasteful litigation, Rule 408 bars the admission of most evidence of offers of compromise and settlement."). This evidence, however, "may [be] admit[ted] for another purpose, such as proving a witness's bias or prejudice, negating a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution." Fed. R. Evid. 408(b). Based on Mr. Sparano's description of the document, the letter is a settlement offer. Defendant does not explain what "[o]ther purpose" it has for using the letter as evidence, and so the Court will not allow the document to be added to the exhibit list.

---

[3] Plaintiff, throughout his submissions, refers to Fed. R. Civ. P. 408, which does not exist. The Court assumes that Plaintiff meant to refer to Federal Rule of Evidence 408, which concerns "Compromise Offers and Negotiations." Fed. R. Evid. 408.

Accordingly, the motion to amend the pretrial memorandum will be denied.

**B. Motions *in Limine***

**1. Defendant's Motion *in Limine* Re: Damages**

JLO Automotive moves to "limit the scope of Plaintiff['s] . . . presentation of evidence at trial to only evidence of actual damages, and not statutory damages, in connection with his claim for violation of TILA." Def.'s First Mot. in Lim. at 1. JLO Automotive argues that 15 U.S.C. § 1640, which does not mention § 1638(b)(1) timing violations, makes "clear that TILA does not allow for statutory damages for claims that the TILA disclosures were untimely under § 1638(b)(1)." *Id*. at 4. Defendant also cites to decisions from the Sixth Circuit, Seventh Circuit, and Ninth Circuit holding that § 1638(b)(1) violations do not entitle plaintiffs to statutory damages. *Id*. at 4–5 (citing *In re Ferrell*, 539 F.3d 1186, 1191 (9th Cir. 2008); *Baker v. Sunny Chevrolet, Inc.*, 349 F.3d 862, 871 (6th Cir. 2003); *Brown v. Payday Check Advance, Inc.*, 202 F.3d 987, 989 (7th Cir. 2000)).

Mr. Sparano responds that, applying various canons of interpretation, 15 U.S.C. § 1640(a)'s omission of § 1638(b)(1) demonstrates that "timing violation results in statutory damages for an individual plaintiff." Pl.'s Opp'n to Mot. Re Damages, ECF No. 76 at 2, ECF No. 86 (Dec. 3, 2021). Mr. Sparano further argues that the part of § 1640(a) cited by JLO Automotive applies only to class actions, an argument that he supports by noting that the relevant paragraph begins with "[i]n determining the amount of award in any class action," and that "most of the cases cited by [D]efendant are class actions or with different facts . . . ." *Id*. at 2–3.

Mr. Sparano generally notes that "there is [still in this case] also the issue of whether the disclosures were accurate," under 15 U.S.C. § 1638(a)(6). *Id*. at 4. As to this second potential TILA issue, Mr. Sparano interprets the Court's Order to mean that "[i]f the authorization for

7

weekly payments was before consummation, then proper disclosure was necessarily not made."
*Id*.

The Court disagrees.

The Court first clarifies the issues that remain alive in this case. As mentioned above,
after the summary judgment stage, the remaining issues concern the potential timeliness of the
TILA disclosures and the breach of contract claim.

In its Order on the motions for summary judgment, the Court held that it "cannot be
conclusively determined whether the authorization for withdrawal of weekly payments occurred
before or after initial monthly disclosures were provided." Order at 12. In so noting, the Court
emphasized that JLO Automotive's motion for summary judgment for the alleged TILA
violation could not be granted because of the clear timeliness issue that a jury must resolve. As to
the accuracy claim, the Court concluded that accuracy could be an issue if the Defendant argued
that "events occurring after a transaction" triggered an additional disclosure obligation. *Id*. at 11
(noting the potential circumstances, outlined in 12 C.F.R. § 226.20, that may trigger an
additional disclosure obligation).

Mr. Sparano, however, has not made this claim in any of his filings and, in any event, it is
unlikely that a refinancing—the only potential triggering event the Court could reasonably
consider here—was involved. *See* 12 C.F.R. § 226.20(a) ("A refinancing occurs when an existing
obligation that was subject to this subpart is satisfied and replaced by a new obligation
undertaken by the same consumer."); *see also Pechinski v. Astoria Fed. Sav. & Loan Ass'n*, 345
F.3d 78, 82 (2d Cir. 2003) (noting that "refinancing . . . is commonly understood to mean only
the prepayment of one loan with the proceeds of another").

Mr. Sparano now argues that an accuracy claim is viable based on "'whether the authorization for withdrawal of weekly payments occurred before or after initial monthly disclosures were provided.'" Pl.'s Opp'n to Mot. Re Damages, ECF No. 76 at 4, ECF No. 86 (Dec. 3, 2021) (quoting Order at 12). Mr. Sparano claims that "[i]f the authorization for weekly payments was before consummation, then proper disclosure was necessarily not made." *Id*. Notably, this potential sequence of events is contrary to what Plaintiff seems to have previously alleged. *See* Pl.'s Local R. 56(a)(2) Statement at 5, ECF No. 61-5 (Oct. 14, 2020) ("Admitted that plaintiff executed a retail installment contract but it did not consummate the transaction; denied that the transaction was consummated until the legally binding weekly payment agreement of the parties was entered into . . . ."). But Mr. Sparano has not provided the Court with any caselaw to support the argument that an authorization for weekly payments before consummation would create an accuracy issue.

As to whether § 1638(b)(1) violations allow for statutory damages, § 1638(b)(1) is not listed as one of the subsections providing for statutory damages in § 1640(a). Indeed, the Ninth Circuit in *In re Ferrell*, 539 F.3d 1186, 1191 (9th Cir. 2008), held that "[u]nder the plain language of § 1640(a), violations of the disclosure timing rules of § 1638(b)(1) are exempted from statutory damages." The Second Circuit has not ruled on this specific question, but in *Strubel v. Comenity Bank*, 842 F.3d 181, 195–96 (2d Cir. 2016), did hold that statutory damages were available for a violation of § 1637(a)(7), which, it noted, "is expressly enforceable through statutory damages." *Id*.

Two courts in this District have allowed for statutory damages on § 1638 violations, but these opinions address § 1638(a) violations, which are listed in § 1640(a), not § 1638(b), which is not. *See Cartagena-Cordero v. Five Star Cars, LLC*, 3:19-CV-1728 (SRU), 2020 WL

5912601, at *7–8 (finding liability as to 15 U.S.C. § 1638(a) violations); *Ramos v. Goauto Centers of Meriden, LLC*, 3:15-CV-00314 (JAM), 2016 WL 7424119 (D. Conn. Dec. 23, 2016); *see also* Mem. in Supp. of Mot. for J. at 6–9, ECF No. 10-1 (May 19, 2015) (alleging that Defendant failed to provide Plaintiff a copy of the disclosures and failed to accurately disclose the terms of credit).

Accordingly, Defendant's motion regarding damages will be granted.

### 2. Defendant's Motion *in Limine* Re: CUTPA

JLO Automotive also moves to preclude Mr. Sparano "from offering testimony or other evidence beyond the scope of the only two claims remaining in this case: (1) an alleged violation of TILA and (2) an alleged breach of contract arising out of the alleged TILA violation." Def.'s Second Mot. in Lim. at 1. Specifically, JLO Automotive expresses concern because "Plaintiff . . . has made it clear that he intends to pursue his claimed violation of the Connecticut Unfair Trade Practices [('CUTPA')] claim." Mem. of Law. in Supp. of Def.'s Mot. in Lim. Re: Limiting Evidence and Argument to TILA and Breach of Contract Claims at 2, ECF No. 77-1 (Nov. 19, 2021). In support, Defendant cites to the Court's Order, which said that,

> [t]he Court further agrees with Defendant that Plaintiff's potential
> claims for 'unfair practices or breach of the duty of good faith and
> fair dealing,' *see* Compl. ¶ 1, which are not addressed in Plaintiff's
> response to Defendant's motion for summary judgment, *see* Def.
> Mot. Summ. J. at 29 n.9; Pl. Opp'n are conclusory, and, to the extent
> that Plaintiff is still pursuing them, dismissed.

Order at 21, n.12.

Mr. Sparano argues that Defendant's motion should be denied because "violation of TILA is generally a violation of the Connecticut Unfair Trade Practices Act." Pl.'s Opp'n to CUTPA Mot. in Lim at 1, ECF No. 84 (Dec. 2, 2021). According to Mr. Sparano, "'[t]he failure in a complaint to cite a statute, or to cite the correct one, in no way affects the merits of a claim.

Factual allegations alone are what matters.'" *Id*. at 2 (quoting *Townsend v. Benjamin Enterprises, Inc.*, 679 F.3d 41, 57 (2d Cir. 2012)). He also argues that the Court should "delete" the footnote containing the aforementioned dismissal of any potential unfair practices claims because "Defendant submitted an inapposite footnote requesting dismissal of the CUTPA claim, even though there was no motion to dismiss pending, the cross-motions dealt only with the TILA issues, and there was no substantive briefing as to any CUTPA issue." *Id*. at 2-4.

The Court disagrees.

Significantly, there is no reference whatsoever to CUTPA in Mr. Sparano's Complaint. *See* Compl. at 1 ("This is an action for actual, statutory and punitive damages and attorneys['] fees for violation of the Truth in Lending Act . . . ; the Credit Repair Organizations Act . . . ; the Electronic Fund Transfer[ ] Act . . . , [and] for unfair trade practices or breach of the duty of good faith and fair dealing."). Nor has Mr. Sparano at any point in time sought to amend his Complaint to include expressly a CUTPA claim. Moreover, after the Court included language in its summary judgment ruling dismissing a CUTPA claim, to the extent Mr. Sparano sought to raise one, he did not timely file a motion to reconsider the Court's ruling. *See* Fed. R. Civ. P. 59(e) ("A motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment."); D. Conn. L. Civ. R. 7(c) (indicating that motions for reconsideration "where . . . appropriate . . . shall be filed and served within seven (7) days of the filing of the decision or order from which such relief is sought"). In fact, the only motion for reconsideration following the Court's ruling came from the Defendant, not Mr. Sparano. *See* Def.'s Mot. for Recons., ECF No. 68 (Oct. 7, 2021).

As a result, regardless of how viable a CUTPA claim Mr. Sparano could have had in this case, *see James v. Lopez Motors, LLC*, 3:16-CV-835 (VLB), 2018 WL 1582552, at *6 (D. Conn.

11

Mar. 31, 2018) ("The Connecticut Supreme Court has held that violations of TILA offend public policy under CUTPA. [. . .] Additionally, when a TILA violation is coupled with another violation that causes substantial injury, a CUTPA claim will lie."), he has waived any right to proceed with a CUTPA claim in this case.

Accordingly, Defendant's motion concerning the CUTPA claim will be granted.

### 3.   Defendant's Motion *in Limine* Re: Parol Evidence Rule

Defendant also moves to "preclude Plaintiff . . . from offering any parol evidence or testimony to attempt to explain or contradict the terms of the signed writings between the parties." Def.'s Third Mot. in Lim. at 1. JLO Automotive argues that "[p]arol evidence 'is inadmissible to alter or add a provision to a written agreement,'" Mem. of Law in Supp. of Def.'s Mot. in Lim. Re: Parol[ ] Evid. R. at 2, ECF No. 78-1 (Nov. 19, 2021) (quoting *Clayton Servs. LLC v. Sun W. Mortg. Co., Inc.*, No. 3:17-CV-00172 (KAD), 2021 WL 2376619, at *8 (D. Conn. June 10, 2021)), and that "extrinsic evidence may not be used to modify, explain, vary or supplement the written integrated contract," *id*.   Defendant cites to various cases applying the parol evidence rule to TILA claims, including two cases in this District. *Id*. at 3–4 (citing *Muñoz v. JLO Auto., Inc.*, No. 3:19-CV-01793 (MPS), 2020 WL 4432946, at *4 (D. Conn. July 31, 2020); *Farrell v. Rd. Ready Used Cars, Inc.*, No. 3:17-CV-2030 (JCH), 2018 WL 1936143, at *4 (D. Conn. Apr. 24, 2018)). It also notes, however, that a third case in this District, as noted in the Court's Order, did not apply the parol evidence rule. *Id*. at 4–5 (citing *Sterling v. Farran & Ezedine, LLC*, No. 3:10-CV-1119 (WWE), 2011 WL 219697, at *3 (D. Conn. Jan. 20, 2011)). According to Defendant, "th[e *Sterling*] case is distinguishable because the defendant there never appeared and the decision was thus in connection with a default judgment," and it is also older than the *Muñoz* and *Farrell* opinions. *Id*. at 5.

Mr. Sparano first argues that "parol evidence is not evidentiary, [and] thus is not appropriate for a motion *in limine*." Pl.'s Opp'n to Parol Evid. Mot. in Lim. at 1, ECF No. 83 (Dec. 2, 2021). Instead, "[i]t is a rule of contract interpretation" and "'[p]arol evidence is admissible (1) to explain an ambiguity appearing in the instrument; (2) to prove a collateral oral agreement which does not vary the terms of the writing; (3) to add a missing term in a writing which indicates on its face that it does not set forth the complete agreement; (4) to show mistake or fraud.'" *Id.* at 1–2 (quoting *Jay Realty, Inc. v. Ahearn Dev. Corp.*, 189 Conn. 52, 56, 453 A.2d 771, 773 (1983)). Mr. Sparano also argues that in *Munoz*, the court reconsidered and vacated its initial opinion after the court "allowed the consumer to testify." *Id.* at 5.

The Court agrees.

First, the Court is unaware of any case law indicating that parol evidence is not appropriate for a motion *in limine*, and Mr. Sparano has failed to support this claim. The Court acknowledged in its Order that "there are different views as to whether evidence outside the retail installment contract may be considered for the purpose of establishing TILA liability." Order at 14.

The Court agrees, however, with Mr. Sparano's analysis of the *Muñoz* case, and recognizes that the court in *Muñoz*, on reconsideration, relied on parol evidence to find a TILA violation. *See Muñoz*, 2020 WL 6607789, at *3 ("Thus, notwithstanding its clear disclosure in the relevant agreement, Executive Kia violated Regulation Z and TILA by *telling Muñoz that* GAP insurance was required and by failing to include its cost, as well as the interest on that cost, in the finance charge." (emphasis added)). The Court, like the *Muñoz* and *Sterling* courts, will allow Plaintiff to offer parol evidence or testimony.

Accordingly, Defendant's motion concerning parol evidence will be denied.

13

### 4. **Plaintiff's Motion** *in Limine*

Mr. Sparano filed an omnibus motion *in limine* that requests various restrictions on Defendant's presentation of evidence.

### a. **JLO's Proffered Witnesses**

First, Mr. Sparano moves to preclude JLO Automotive "from offering any witnesses." Pl.'s Mem. on Mot. in Lim. at 2, ECF No. 79-1 (Nov. 19, 2021) ("Pl.'s Mem."). The witnesses at issue are John Gogliettino, General Manager of JLO Automotive; Jeff Martin; and Joseph Ortiz. *Id*. at 2–4. According to Mr. Sparano, Mr. Gogliettino should be precluded as a witness because he "was not present at the transaction," and so any testimony "as to the transaction would be hearsay and should be disallowed." *Id*. Mr. Gogliettino should also be precluded, Mr. Sparano argues, because he will be testifying about "policies and procedures for sales of automobiles at JLO Automotive," which "are irrelevant as to what actually happened in the nine-minute transaction." *Id*. at 3. The policies and procedures, according to Mr. Sparano, "would be relevant to any bona fide error defense, but that defense has been waived," because "Defendant never pleaded the bona fide error defense," "which requires the dealer to admit an error and then show how it was a mistake of some kind." *Id*.

Mr. Sparano argues that Jeff Martin, who was "previously undisclosed either in the initial disclosures or on summary judgment," should also not be allowed to testify because although he "sent emails to [P]laintiff before and after the November 5, 2018 transaction," he was not present and "has no known non-hearsay information." *Id*. at 4. Finally, Mr. Sparano argues that Joseph Ortiz should be precluded because he was not mentioned in Defendant's "initial disclosures and [Defendant] did not mention or rely on him for any information about the transaction during the cross-motions for summary judgment." *Id*. "The last minute disclosure of a person who had an

14

unknown role in an unknown capacity mandates that, pursuant to [Federal Rule of Civil Procedure] 37, his testimony be precluded." *Id.*

JLO Automotive argues that Mr. Gogliettino's testimony "will not be hearsay" because his testimony "about the policies and procedures for sales of automobiles at JLO Automotive" will be "based on his firsthand knowledge." Def.'s Obj. to Pl.'s Mot. in Lim., ECF No. 87, at 2 (Dec. 3, 2021) ("Def.'s Obj."). As to the relevance of Mr. Gogliettino's testimony, JLO Automotive alleges that his testimony is "highly relevant to Plaintiff's claims" because "Plaintiff alleged in his Complaint that 'the defendant's acts complained of . . . were done or omitted as a matter of routine practice and procedure.'" *Id.* at 2–3 (citing Compl. at 2). Furthermore, according to JLO Automotive, Plaintiff's allegation in the summary judgment stage that the documents stating that Mr. Sparano "had 'an opportunity to review,'" *id.* at 3 (quoting Pl.'s Opp'n to Def.'s Summ. J. at 4, ECF No. 61 (Oct. 14, 2020)), a paper copy of the Retail Installment Contract "[is] a reprehensible way to avoid giving mandatory disclosures in compliance with TILA," *id.*, which "necessarily call[s] into question the policies and procedures at JLO," and so Mr. Gogliettino "is the appropriate witness to testify on these matters of 'practice and procedure,'" *id.* Finally, JLO Automotive says that because Mr. Sparano "contends that he did not receive the disclosures before consummation of the transaction[,] [t]estimony regarding the policy and procedure for the sales of automobiles at JLO is certainly of consequence to the determination of this disputed issue of fact, and to each parties' credibility." *Id.* at 3 (citing Fed. R. Evid. 402).

As to the testimony concerning Mr. Martin and Mr. Ortiz, JLO Automotive argues that the Court should not preclude their testimony because "Plaintiff has at all times been aware of Mr. Martin and Mr. Ortiz's knowledge with respect to Plaintiff's claim," *id.* at 4, "JLO did

identify [these witnesses] in its [Rule 26(a)(1)] Initial Disclosures," they were also listed in the

Joint Trial Memorandum, which "complies with Rule 26(a)(3) . . . ," *id.* at 5, and they are being

offered "for impeachment," which means that Rules 26(a)(1) and (a)(3) do not apply, *id.* at 6

(citing *Ling-Rong Chen v. City of Syracuse*, 385 F. App'x 41, 42 (2d Cir. 2010) (summary

order)).

      The Court agrees, in part.

      "The Federal Rules of Evidence define hearsay as a declarant's out-of-court statement

'offer[ed] in evidence to prove the truth of the matter asserted in the statement.'" *United States v.*

*Dupree*, 706 F.3d 131, 136 (2d Cir. 2013) (quoting Fed R. Evid. 801(c)). Mr. Gogliettino's

proposed testimony is based on his firsthand knowledge of the policies and procedures. The

proposed testimony, however, even if not hearsay, is not relevant to the specific exchange

concerning Mr. Sparano. *See* Fed. R. Evid. 402 ("Irrelevant evidence is not admissible.").

Though Mr. Sparano called into question JLO Automotive's policies and procedures in his

filings, the case does not challenge the policies and procedures but rather the specific sequence

of events on the day that Mr. Sparano purchased his vehicle. Mr. Gogliettino's testimony is

therefore precluded, though the Court may revisit this decision, if Mr. Sparano makes JLO

Automotive's policies and procedures relevant at trial.

      As to Mr. Martin and Mr. Ortiz's testimony, JLO Automotive did not provide "the

name[s]" of Mr. Martin and Mr. Ortiz in their initial disclosures, as required by Federal Rule of

Civil Procedure 26(a)(1)(A)(i). *See* Fed R. Civ. P. 26(a)(1) ("[A] party must, without awaiting a

discovery request, provide to the other parties [ ] the name . . . of each individual likely to have

discoverable information."). The Court agrees that JLO Automotive complied with the

requirements of Federal Rule of Civil Procedure 26(a)(3), which likewise requires that the parties

provide "name[s] . . . identifying those the party expects to present and those it may call if the need arises[.]" Fed. R. Civ. P. 23(a)(3)(A)(i). But these rules absolve the parties from the disclosure requirement, if the witnesses will be used solely for impeachment. *See* Fed. R. Civ. P. 23(a)(1)(A)(i), 26(a)(3)(A). Thus, to the extent that JLO Automotive intends to call these witnesses to impeach Mr. Sparano, the Court finds no violation of Federal Rule of Civil Procedure 23.

The Court also denies Mr. Sparano's request to sanction JLO Automotive for not listing the witnesses' names in their initial disclosure. *See Design Strategy, Inc. v. Davis*, 469 F.3d 284, 294 (2d Cir. 2006) ("A district court has wide discretion to impose sanctions, including severe sanctions under Federal Rule of Civil Procedure 37, and its ruling will be reversed only if it constitutes an abuse of discretion."). In applying its discretion on whether to preclude a witness, a court should consider: "(1) the party's explanation for the failure to comply with the disclosure requirement; (2) the importance of the testimony of the precluded witness[ ]; (3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new testimony; and (4) the possibility of a continuance." *Patterson v. Balsamico,* 440 F.3d 104, 117 (2d Cir. 2006) (internal citation and quotation marks omitted)). The Court notes that the testimony of these witnesses is at the center of this trial, which is focused on whether and when Mr. Sparano was provided disclosures. Their testimony is thus important.

Any prejudice Mr. Sparano may claim to suffer from having to prepare to meet this testimony is limited by the fact that, in October of 2019, he identified these two witnesses as "witnesses to the allegations contained in the Plaintiff's complaint." Ex. B to Def.'s Obj. at 11, ECF No. 87-2 (Dec. 3, 2021). He also has been aware, since at least November 19, 2021, when

the Joint Trial Memorandum was filed, that the Defendant may call these two individuals as witnesses. *See* Joint Trial Mem. at 6, ECF No. 75 (Nov. 19, 2021).

### b.  Reliance on Contents of Documents

Mr. Sparano argues that JLO Automotive "should be precluded from making any argument based on the conten[ts] of the documents," because "[t]he law precludes creditors . . . from evading the statutory requirement to provide to the consumer a physical copy of the written disclosure . . . ." Pl.'s Mem. at 4. Specifically, Mr. Sparano is concerned about "allow[ing] the jury to consider the acknowledgement of delivery" in the documents he signed. *Id*. He claims that 15 U.S.C. § 1635(c) ("Notwithstanding any rule of evidence, written acknowledgment of receipt of any disclosures required under this subchapter by a person to whom information, forms, and a statement is required to be given pursuant to this section does no more than create a rebuttable presumption of delivery thereof.") and Conn. Gen. Stat. § 36a-777 ("An acknowledgment by the retail buyer of the delivery of any such copy, notice or statement as is required in section 36a-771 or 36a-774 contained in the body of the statement or contract shall be conclusive proof of delivery in any action or proceeding by or against any assignee without knowledge to the contrary when he acquires the obligation.") support the claim that evasion of disclosure requirements by using delivery acknowledgment clauses is prohibited. *Id*. at 4–5.

Mr. Sparano points to a Third Circuit case which, he claims, supports the notion that "it would be error" to have the jury consider the acknowledgment clause. *Id*. at 5 (citing *Cappuccio v. Prime Cap. Funding LLC*, 649 F.3d 180, 192 (3d Cir. 2011)). He cites to where the Third Circuit says that "as a matter of good practice, where a party has produced sufficient facts to rebut a Rule 301 presumption, and it drops out of the case, the District Court should avoid references to such a presumption in its instructions." *Cappuccio*, 649 F.3d at 192. Mr. Sparano

believes that "[P]laintiff has already rebutted the presumption" because "the Court denied summary judgment because of the issue of fact whether [P]laintiff received the mandatory disclosures." Pl.'s Mem. at 5.

JLO Automotive argues that "'[i]n Connecticut, the general rule is that where a person of mature years and who can read and write signs or accepts a formal written contract affecting his pecuniary interests, it is his duty to read it and notice of its contents will be imputed to him if he negligently fails to do so.'" Def.'s Obj. at 7 (quoting *Delk v. Go Vertical, Inc.*, 303 F. Supp. 2d 94, 99 (D. Conn. 2004)). They also argue that 15 U.S.C. § 1635(c) actually "makes patently clear that the Court should permit JLO to rely on these documents" and that Plaintiff will then have "the burden to rebut the presumption of delivery," a burden that Plaintiff "has not yet met" because "this Court has only held that whether Plaintiff in fact received the TILA disclosures before consummation of the contract was a question of fact." *Id*. Conn. Gen. Stat. § 36a-777, they claim, "even further support[s] JLO's position" and confirms that "Plaintiff's acknowledgments should be conclusive proof that he received and had the opportunity to review the Retail Installment Contract Review Copy." *Id*. JLO Automotive also argues that *Cappuccio* "does not support Plaintiff's position" because the Third Circuit "did *not* find that it was error to allow the jury to see or hear evidence about the [acknowledgement of delivery] notice itself." *Id*. at 8.

The Court agrees.

Neither 15 U.S.C. § 1635(c) nor Conn. Gen. Stat. § 36a-777 establish that a jury should be prevented from considering an acknowledgment of delivery notice. Nor is the Court aware of any opinion by the Second Circuit or any other court in this District that interprets 15 U.S.C. § 1635(c) to prevent the notice from being presented to the jury. Mr. Sparano cites to a Third

Circuit case that discusses "good practice, where a party has produced sufficient facts to rebut a Rule 301 presumption, and it drops out of the case," pertaining to "[jury] instructions." *Cappuccio*, 649 F.3d at 192. Notably, the Third Circuit opinion, which is not binding in this District, does not address whether the district court erred in allowing the jury to consider the delivery notice.

### c.  Reference to Abandoned and Unsubstantiated Theories

Mr. Sparano requests that the Court preclude Defendant from "hinting" "that it *did* give plaintiff the weekly payment disclosures mandated by TILA," because "Defendant has abandoned its insistence that there was a separate weekly payment contract entered into with CAC on November 6." Pl.'s Mem. at 5.

Defendant states that it "has never represented that it provided Plaintiff with TILA disclosures showing 'weekly' payments." Def.'s Obj. at 9.

Seeing no disagreement, the Court denies this request.

### d.  Reference to Partial Documents

Mr. Sparano also requests that "Defendant . . . be precluded from referring to partial documents." Pl.'s Mem at 6. He states that "[i]t appears from discussion of the [Joint] Trial Memorandum that [D]efendant inten[d]s to introduce or show the jury only . . . part of some documents." *Id*. Mr. Sparano does not list the documents he is referring to, and only broadly states that, "if the consumer's signature appears on any document signed by the dealer, the [D]efendant should also disclose the timing of the dealer's signature." *Id*. Mr. Sparano notes that he "asked that defendant stipulate to" certain time stamps showing when the dealer signed the retail instalment contract, the GAP Waiver and GAP Addendum, and the service contract. *Id*. In support of requiring that the timing of the dealer's signature be disclosed, Mr. Sparano argues

that the timing is "salient" because "[n]o one became obligated on the contract until both parties had signed." *Id*. He argues that "Fed. R. Evid. 106 allows [him] to require introduction of any part of a document that should, in fairness, be considered." *Id*.

Defendant argues that they "do not intend to offer into evidence 'partial documents.'" Def.'s Obj. at 9. Defendant says that Plaintiff "misunderstand[s] the law of the case" because "the law is clear that it is the buyer's signature that consummates the transaction, and not the creditor's signature." *Id*. at 10. In support, Defendant cites to *Conley v. 1008 Bank St., LLC*, No. 3:20-CV-284 (CSH), 2020 WL 4926599 (D. Conn. Aug. 22, 2020) and cases from other circuits. *Id*. Defendant also cites to Regulation Z and the "overarching purpose of consumer protection." *Id*. at 10–11 (citing 12 C.F.R. § 226.2 ("Consummation means the time that a consumer becomes contractually obligated on a credit transaction.")); *Bryson v. Bank of New York*, 584 F. Supp. 1306, 1317 (S.D.N.Y. 1984) ("[T]he point at which the consumer . . . commits himself or herself to the purchase of credit, without regard for the degree of commitment of the lender . . . [is the point at which] the consumer becomes vulnerable to actual damage . . . for at this time he or she can be contractually bound . . . ."). According to Defendant, "[t]he facts Plaintiff proposed to be stipulated are simply not relevant." *Id*. at 11. Moreover, according to Defendant, "JLO did not stipulate to these 'facts' because Plaintiff refused to provide JLO with the documents that his counsel claimed supported these 'facts,' despite JLO counsel's request that the documents be disclosed." *Id*. Accordingly, Defendant indicates that they do not intend to offer into evidence partial documents and that Plaintiff's request should be denied.

The Court agrees, in part.

The Court recognizes that "[w]ith regard to writings, one cannot introduce only the favorable portion of a document without the adversary successfully demanding production of the

entire writing." *Baker v. Goldman Sachs & Co.*, 669 F.3d 105, 111 (2d Cir. 2012); *see also*

*Phoenix Associates III v. Stone*, 60 F.3d 95, 102 (2d Cir. 1995) ("We have interpreted Rule 106

to require that a document be admitted when it is essential to explain an already admitted

document, to place the admitted document in context, or to avoid misleading the trier of fact."

(internal citation and quotation marks omitted)). The Court, however, will not issue a blanket

order because it must assess evidence on a case-by-case basis, and only after determining

whether such an order is necessary in light of Plaintiff's presentation of the case.

The Court also takes this opportunity to clarify its Order, where it said that "[u]nder

Connecticut law, it is well settled that consummation occurs when the buyer signs the retail

installment contract, which obligates them to lend and borrow the funds." Order at 10. The Court

cited to *Conley v. 1008 Bank St., LLC*, where the court held that "Plaintiff had not become

contractually obligated until *he* signed the Contract." No. 3:20-CV-284 (CSG), 2020 WL

4926599, at *7 (D. Conn. Aug. 22, 2020) (internal quotation marks omitted). The emphasis in

this quote is relevant, because that plaintiff was not previously contractually obligated when his

signature had been forged and became contractually obligated when he, and not someone else,

signed the contract.

The Second Circuit has said, in a case also cited in this Court's Order, that a "transaction

is consummated when the lender and borrower sign a contract obligating them, respectively, to

lend and to borrow the funds." *Murphy v. Empire of America, FSA*, 746 F.2d 931, 933–34 (2d

Cir. 1984). This Court has also in greater detail outlined the applicable law in Connecticut for

determining when consummation occurs. *See Bentley v. Greensky Trade Credit, LLC*, 156 F.

Supp. 3d 274, 288 (D. Conn. 2015) ("Under Connecticut law, 'consummation' occurs when both

parties have become bound to the terms of the financing."); *see also Bank of New York v.*

*Conway*, 916 A.2d 130, 199–200 (Conn. Super. Ct. 2006) ("It is settled law in Connecticut that '[t]o form a contract, generally there must be a bargain in which there is manifestation of mutual assent to the exchange . . . made wholly or partly by written or spoken words or by other acts or by failure to act . . . [The] agreement . . . requires a clear and definite promise.'" (quoting *Bartomeli v. Bartomeli*, 783 A.2d 1050, 1055 (Conn. App. 2001)). As a result, based on the caselaw, the consummation occurred after both parties signed the contract.

### e.  Paper Copies

Mr. Sparano also argues that Defendant "should provide paper copies" of evidence for the jury, the Plaintiff, and the Court.  Pl.'s Mem. at 6.

Defendant responds that Plaintiff "provides no explanation . . . as to why JLO must present its exhibits using paper copies as opposed to electronic copies." Def.'s Obj. at 11. Defendant further states that "[u]nless the Court would prefer JLO to use paper copies, JLO intends to present its evidence using electronic copies." *Id*. at 12.

The Court agrees.

This is a ministerial matter that shall not be addressed in a motion *in limine*.

### f.  Reference to Attorney's Fees

Mr. Sparano requests that Defendant "be precluded from any reference to attorney's fees." Pl.'s Mem. at 7. According to Mr. Sparano, "Defendant should be precluded from mentioning or suggesting that plaintiff will or may get paid money for costs and attorney's fees, or that defendant will apply for fees," because "[i]t is unrelated to any issues before the jury and its introduction could mislead or confuse the jury or unfairly prejudice plaintiff's case." *Id*. In support, he notes that, in *Brooks v. Cook*, 938 F.2d 1048, 1050 (9th Cir. 1991), the Ninth Circuit held that "[i]n a case where the Plaintiff is entitled to compensatory damages, informing the jury

of the [P]laintiff's potential right to receive attorney's fees might lead the jury to offset the fees by reducing the damage award." *Id*. Mr. Sparano adds that "[s]uch reference has no probative value and clearly would be for the sole purpose of unfair prejudice, confusing the issues, and misleading the jury." *Id*.

Defendant responds that "[t]here is no authority that supports Plaintiff's claim that a jury cannot hear evidence of attorney's fees." Def.'s Obj. at 12. Defendant further notes that *Brooks* "is . . . not controlling law," that it "speaks only to the propriety of jury instructions informing the jury of the plaintiff's right to counsel fees," and that "several courts have since rejected application of *Brooks*." *Id*. According to Defendant, "Plaintiff's entitlement to attorney's fees may be relevant to explain why Plaintiff brought this lawsuit" and "may also be relevant to the issue of Plaintiff's credibility." *Id*. at 13. Defendant finally notes that they are "willing to stipulate that the Court can decide any award of attorney's fees to a party after the jury renders its verdict." *Id*.

The Court disagrees.

The Court will preclude reference to attorney's fees under Rule 403, as such references may confuse the jury about the ultimate issues to be decided: liability under TILA. *See, e.g.*, *Barbarian Rugby Wear, Inc. v. PRL USA Holdings, Inc.*, No. 06-CV-2652 (JGK), 2009 WL 884515 (S.D.N.Y. Mar. 31, 2009) ("This Court presently sees no reason . . . for the jury to be made privy to the amount that Barbarian has spent on counsel in or prior to this litigation, and agrees with PRL that the danger of undue prejudice would outweigh any probative value of which the Court is currently aware." (citing Fed. R. Evid. 403)). In light of the Defendant's stipulation, however, there may be no need for the Court to resolve this issue because at trial, Defendant has agreed to restrict evidence pertaining to fees. *See Villafane Elec. Corp. v.*

24

*Reliance Ins. Co.*, No. 02-CV-2682 (DC), 03-CV-4645 (DC), 2004 WL 385041, at *4 (S.D.N.Y.
Mar. 2, 2004) (granting a similar motion after concluding that attorneys' fees was an issue for the
Court and not the jury to decide); *see also Cartagena-Cordero*, 2020 WL 5912601, at *16
("Pursuant to the TILA, in any 'successful action,' the prevailing party is entitled to 'the costs of
the action, together with a reasonable attorney's fee as determined by the court.'" (quoting 15
U.S.C. § 1640(a)(3))).

### g.  Reference to Settlement Efforts or Amounts

Plaintiff requests that Defendant "be precluded from any reference to settlement efforts or
amounts." Pl.'s Mem. at 8. He says that "[s]uch settlement efforts may and should be considered
only in awarding fees." *Id.* (citing Fed. R. Evid. 408).

JLO Automotive says that it "has no intention of informing the jury about the settlement
discussions between the parties after this lawsuit was filed." Def.'s Obj. at 13. Defendant notes
that Plaintiff may be "referring to a demand letter that his counsel sen[t] to Defendant before this
suit was filed. And Defendant may use that letter in this case." *Id.*

The Court disagrees.

As noted above, *supra* Section II.A, this letter is a negotiation offer under Fed. R. Evid.
408, and Defendant has not provided "another reason" for why this letter should be allowed into
evidence other than for a prohibited use.

### III.   CONCLUSION

For the foregoing reasons, the motion to amend [88] is **DENIED**; Mr. Sparano's [79]
motion *in limine* is **GRANTED in part and DENIED in part**; JLO Automotive's [76] motion
*in limine* is **GRANTED**; JLO Automotive's [77] motion *in limine* is **GRANTED**; JLO
Automotive's [78] *motion in limine* is **DENIED**. The Court's ruling, however, is "subject to

change when the case unfolds, particularly if the actual testimony differs from what was [expected]." *Luce*, 469 U.S. at 41.

      **SO ORDERED** at Bridgeport, Connecticut, this 29th day of January, 2022.

                                          /s/ Victor A. Bolden
                                          Victor A. Bolden
                                          United States District Judge